E-FILED
Tuesday, 03 February, 2009  11:48:04 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

R.H. and T.H., as parents and next    )
    friend of their minor daughter,    )
    L.H.    )
    )
J.R., as parent and next friend of his    )
    minor daughter, J.R.,    )
    )    No. 07-CV-1262
    Plaintiffs,    )
    )
    v.    )
    )
Lewistown Community Unit    )
School District #97, Fulton County,    )
Illinois, a/k/a Lewistown School District;    )
    )
William King, in his official capacity    )
as Superintendent of Schools; and,    )
    )
Does 1 through 50,    )
    )
    Defendants.    )

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiffs' Petition for Fees and Costs is now before the Court for a

Report and Recommendation (d/e 19).

### Background

Plaintiffs brought this suit under Title IX and the equal protection

clause of the Fourteenth Amendment, alleging gender discrimination in the

opportunities and facilities for the softball team of the Lewistown School District.  In their status report of May 2008, the parties reported having settled the case, except as to attorney's fees and costs, which they ask the Court to decide.  (d/e 16 ¶ 1-2).  Once the Court decides the issue, the parties represent that they will file a final settlement agreement and jointly move for dismissal.  Id.

Attached to Plaintiffs' petition for fees is a "Consent Decree and Settlement Agreement," signed by the parties in March 2008.  (D/e 20 Ex. 2).  The Agreement requires the School District to take specific actions with regard to its softball fields and to provide equal funding and access for the women's softball and men's baseball teams.  (d/e 20, pp. 4-5).  These duties, however, arise only after the Agreement is approved by the Court. (d/e 20 ¶ 3).

The Agreement further states that the School District agrees to reimburse Plaintiffs for their "reasonable attorneys' fees and costs associated with the filing of the Lawsuit."  (d/e 20, ¶ 7).  The Agreement does not, however, "obligate[] the District to reimburse the Plaintiffs for future fees and costs associated with this Lawsuit . . . ."  (d/e 20, ¶ 7).[1]

---

[1]The parties do not define "filing" and "future" but the Court believes it is reasonably clear from their submissions that they agree the time frame for recoverable fees in this action includes all work on this case up to the point a court order is entered on the fees.

Though the paragraph on attorney's fees does not specify how the reasonableness of the fees will be determined, it is clear from their joint status report that the parties agree the Court will make this determination.

## Discussion

From the beginning of their representation through the filing of their petition for fees, Plaintiffs' attorneys seek at total of $49,000.00 in fees[2] (122.5 hours X $400/hour) and $2,468.13 in costs.  Plaintiffs seek an additional $10,240.00 in fees (25.6 hours X $400/hour) and $15.75 in costs for responding to Defendants' objections to their petition.  That brings Plaintiffs' total request to $59,240.00 in fees and $2,483.88 in costs. Defendants object both to the hourly rate and the number of hours, asserting that Plaintiffs should be paid only $8,908.00 for fees (33.4 hours X $250/hour + $558 for the fee petition) and $350 for costs (the filing fee).[3]

Plaintiffs are "prevailing parties" under 42 U.S.C. § 1988(b), as evidenced by the Consent Decree and Settlement Agreement, which grants Plaintiff relief, requires court approval, and in which Defendants concede Plaintiffs are entitled to reasonable attorney's fees and costs. *See* Zessar v. Keith, 536 F.3d 788, 795-96 (7th Cir. 2008)("Settlement

---

[2]$44,840 for Mr. Schiller and $4,160 for Mr. Yasser.

[3]33 hours for Mr. Schiller, .4 hours for Mr. Yasser, plus $558.00 for the fee petition.

agreements will not suffice to render a party prevailing unless they are made enforceable under a consent decree."; *see also* <u>Gautreaux v. Chicago Housing Authority</u>, 491 F.3d 649, 655 (7th Cir. 2007)("cases in which 'the terms of the settlement were incorporated into the dismissal order and the order was signed by the court rather than the parties, or the order provided that the court would retain jurisdiction to enforce the terms of the settlement,' have a sufficient judicial imprimatur to entitle the plaintiff to prevailing-party status").

"The amount of the award is determined by calculating a lodestar after looking to 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" <u>Robinson v. City of Harvey</u> 489 F.3d 864, 871 (7th Cir. 2007), *quoting* <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The lodestar amount may then be revised in either direction upon consideration of a host of additional factors." <u>Id.</u>

**I.     Hourly Rate**

A reasonable hourly rate must first be determined.  "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in

question. . . (citation omitted).  The burden of proving the market rate is on the applicant."  <u>Stark v. PPM America, Inc.</u>, 354 F.3d 666, 674 (7th Cir. 2004).

Mr. Schiller asserts that, since his practice is exclusively Title IX litigation throughout the country, he does not have a standard billing rate, but rather "the rate varies, as it must, by the District Court in which the case is prosecuted."  (d/e 20, p. 4).  Plaintiffs ask for $400 per hour, using Chicago as the relevant market.  They cite fee awards in the Northern District of Illinois and submit an affidavit of a litigator in the Chicago area who asserts that Plaintiffs' attorneys are leading national lawyers for Title IX litigation, who "would likely command at least $450 per hour . . .in the District Court for the Northern District of Illinois, and at least $400 per hour for work outside of court in the Chicago metropolitan area."  (d/e 20, Ex. 5 ¶ 8).  Plaintiffs also attach the affidavit of Daniel J. Boudreau, a retired Justice of the Oklahoma Supreme Court with extensive litigation and judicial experience.  Mr. Boudreau echoes the sentiment that Plaintiffs' attorneys have a national reputation and the "specialized knowledge, skill, and experience . . . [to] support an attorney's fee at premium hourly rates." (d/e 20, Ex. 4 ¶ 6).

Plaintiffs' attorneys contend that Chicago is the relevant market because Defendants' attorneys are from Chicago.  They do not explain why the location of Defendants' attorneys establishes the relevant market for attorney's fees in this case, nor does the Court see why it should.

Plaintiffs' attorneys are not necessarily restricted to the rates the legal market in central Illinois will bear.  The Seventh Circuit recently explained that "the attorneys' fee . . . be reasonable within the 'community.'"  Jeffboat, LLC v. Director, Office of Workers' Compensation Programs, --- F.3d ----, 2009 WL 66961 *3 (7th Cir. 2009).  The Court in Jeffboat remarked that "community" could be read "as referring to a community of practitioners; particularly when, . . ., the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market."  Id.  In Jeffboat, however, the rate was based on the locale in which Plaintiff's attorney was based, not a national market rate.

Plaintiffs' however, do not argue for a national market rate for Title IX cases nor do they provide any evidence thereof.  The rates Plaintiffs' attorneys can command vary depending on the location of the litigation, as the attorneys themselves admit.  Further, Plaintiffs' attorneys provide no

information about the fees they have actually received in the 40-some Title IX cases they list as having litigated, though that information would arguably be the best evidence of a reasonable rate for them.  Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1998)(where no fee-paying client, "next best evidence of . . . market rate includes . . . rates other attorneys in the area charge paying clients for similar work and evidence of fee award the attorney has received in similar cases."), *citing* People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996).

Plaintiffs submit a national survey of billing rates charged by major law firms in large cities, but that does not establish the market rate for Plaintiffs' attorneys.   As already stated, the market rates Plaintiffs' attorneys can command vary depending on the location of the litigation. Further, Plaintiffs' attorneys have no billing rates–they are paid what they can recover through the court or by settlement.  Plaintiffs' survey is not completely irrelevant, but it is not very persuasive.

Defendants seek an hourly rate of $250, citing two cases in the Central and Southern District of Illinois that awarded (or implicitly approved) $250, and one Southern District case that awarded $300.  *See* Davis v. City of Springfield, 2008 WL 818331 (C.D. Ill. 2007)(3/20/08

order)($250, where that was rate charged to clients and rate recovered in other cases); <u>Reid v. Boyd</u>, 2007 WL 458205 (S.D. Ill. 2007)(remarking that $250 rate was "not particularly troubling" as market rate, but not awarding fee on other grounds); <u>Horina v. City of Granite City, Illinois</u>, 2007 WL 1760873 (S.D. Ill. 2007)(awarding $300, but remarking that it was "low end" of range).

This Court found on its own inquiry that in one of the recent cases litigated by Mr. Schiller, he asked for $275 an hour and received $250. <u>D.H. and T.H. v. Ponca City Independent School District No. 71</u>, 06-CV-523 (N.D. Okla., Chief Judge Eagan)(9/27/07 Order adopting Recommendation for $250 rate)(retrieved from PACER)(awarding $38,375 in attorneys fees–case involved facilities for softball team).[4]

The Court believes that the cases cited by Defendants and the prior cases litigated by Mr. Schiller are better evidence of his reasonable rate in this case than the affidavits of Chicago litigation attorneys. After considering this evidence, the Court believes a reasonable rate is $300 per hour. This rate appears, on this record, to reflect the applicable market

---

[4]The Court has not looked at all the prior cases litigated by Plaintiffs' counsel, but just a few of the more recent ones. All the cases the Court looked at were settled without a fee determination by the court except for the one cited, but there may be others in which a fee was awarded by the Court.

rate in this area for attorneys with Plaintiffs' expertise and experience in a specialized area of law where fees are recoverable under § 1988.

## II.   Hours Worked

The Court next looks at the reasonableness of the hours spent working.  "Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  Stark v. PPM America, Inc., 354 F.3d 666, 674 (7th Cir. 2004).

In support of their claim that the hours they spent were reasonable, Plaintiffs' attorneys submit the bills of *Defendants'* attorneys, who, Plaintiffs assert, billed slightly more on weekly average than Plaintiffs.  Defendants, however, are not seeking payment of their fees from Plaintiffs.  Defendants' attorneys may object to charges even if Defendants' attorneys were paid for similar charges.  This is because whether Defendants' hours are recoverable under Section 1988 is not before the Court.  Defendants' entries, however, may be relevant to determining whether the amount of time spent on a compensable task is reasonable.

### A.   Attorney Samuel Schiller

Mr. Schiller performed the bulk of the work:  112.10 hours for his work through filing his fee petition, and an additional 25.6 hours for

responding to Defendants' objections to those fees.  Thus, Mr. Schiller seeks compensation of $55,080 for a total of 137.7 hours at $400/hour.

The Court first addresses the 112.1 hours of work, which represents Mr. Schiller's time up through filing his fee petition.  Defendants assert that only 33 of those hours (or 18.9%) were reasonable.

Defendants attack the 34.6 hours of work before the Complaint was filed.  About 60% of that time was spent during two days (September 7 and 8, 2008), for travel to and a tour of the School District's facilities, along with conferencing with Plaintiffs.  Defendants assert this time is excessive and that the two days traveling and touring are described too vaguely. Defendants also assert that the time spent traveling should be reimbursed at a 50% reduced rate, if at all.

Attorney time spent determining whether a factual basis exists for an action is necessary before a Complaint is filed.  The investigation is necessary to determine whether a cause of action exists and, particularly in a case like this where Plaintiffs are not being charged, to determining the likelihood of success.  Without significant investigation, Plaintiffs' attorneys could not know if the case is worth taking or how it should be settled.

The Court believes that a tour of the facilities was reasonably necessary for this investigation.  The tour confirmed an arguable basis for the lawsuit existed, and enabled Plaintiffs' counsel to draft a better Complaint and understand the specific changes needed for purposes of settlement negotiations.  Plaintiffs' counsel would have been at a significant disadvantage without first-hand knowledge of the facilities.

The Court does not find the entries for the two days of travel and tour too vague.  However, it is true that the entries do not break out the time for travel, tour, reviewing the file, personal conferences and legal analysis. The drive appeared to be 1,156 miles round trip, according to the expenses sought, which would be about an 8-9 nine hour drive one way.   That leaves about 4.5 hours for the tour and conference with Plaintiffs on the first day, which is reasonable, with the second day being mostly driving. Defendants do not contend that Mr. Schiller could have saved time or money using a different method of travel, such as flying.

In Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984), the Seventh Circuit stated, "The presumption, . . . should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time."  The Henry Court also stated that "if

[the attorneys] charge their paying clients for travel time they are entitled to charge the defendants for that time . . . .""[5]

Here, though, Plaintiffs' attorneys apparently do not charge their clients.  Nor do Plaintiffs' attorneys assert that they have been regularly reimbursed for travel as part of their attorney's fees from their many prior cases, either from court awards or settlement agreements, or, if they were paid for travel, at what rate.   Thus, there is nothing in the record to support the conclusion that Plaintiffs' attorneys are routinely paid at $400 (or $300) per hour for travel time.

Additionally, Henry was based on the rationale of opportunity costs–that the travel time is time lost that could have been spent working.  Here, Mr. Schiller states that he had a driver, so his opportunity cost is less.  Mr. Schiller could have been working on another case en route.  He does not state how much time he spent working on this case while traveling, but 16 hours would be unreasonable given the case's scope and the hours he had already put in analyzing the case.

---

[5]The other case cited by Plaintiffs, Haak v. Hults Ford-Mercury, Inc., 79 F.Supp.2d 1020, 1022 (W.D. Wis. 1999), involved attorneys with established records of what they billed their clients.

Given the lack of record, the Court believes a reduction in the hourly rate is warranted for the travel time on this initial trip.  The Court recommends a reduction to $150 per hour for the 16 hours that appear to represent travel time.  There was a second round of travel in November 2007 for settlement discussions.  The court recommends the same reduction for the second trip ($150 X 16 hours).  Alternatively, the Court recommends that the total travel time of 32 hours (two round trips and 16 hours each) be reduced to 16.

The rest of the time Mr. Schiller worked before filing the Complaint amounts to 11 hours mostly in August 2008, communicating with Plaintiffs by phone and e-mail regarding "factual evidence" and conducting "legal analysis."  This seems somewhat excessive.  Given the familiarity of Mr. Schiller with Title IX law, more fact finding, rather than legal analysis, would be required.  Additionally, the factual basis does not appear particularly complex.  The relevant facts involved what the School District provided for its softball team in terms of facilities, equipment, practice time, number of games, funding and the like.  The Court believes these 11 hours should be reduced to 6 hours.  Added to the approximately 4.5 spent touring, that

totals 10.5 hours of fact finding before the Complaint was filed, which seems reasonable.

Defendants next seek a deduction for "block billing," when entries "simply list" a string of tasks performed on a particular day and the total time spent, without indicating how much time was spent on each of the tasks." (de 22, p. 7).  Defendants single out five entries: the two days for travel and touring before the Complaint was filed; and three days in November 2007 for travel (apparently to the School District) for a settlement conference.  The Court has already addressed the former.  As to the latter, Plaintiffs' attorneys seek 9.10 hours for each day of travel, which included reviewing the file and legal analysis, along with 7.10 hours for the settlement conference with Defendants and personal conferences with Plaintiffs.

As discussed above, the Court will recommend that 16 hours of travel time for the November trip be compensated at a reduced rate of $150.  As to the remainder, the Court sees no problem with the time spent on the settlement conferences.  Defendants' attorney billed 8.10 hours for attending the settlement session and board meeting.  In comparison,

Plaintiffs' attorneys show 7.10 hours, which seems quite reasonable. Breaking it down further is not necessary in the Court's opinion.

Defendants next seek to eliminate 5.3 hours of Mr. Schiller's time spent conferencing with Mr. Yasser about "litigation strategy and legal analysis." Mr. Schiller does not explain why this conferencing was necessary. He argues only that the 5.3 hours amount to an average of 6 minutes per week over the span of the lawsuit. But the number of weeks a lawsuit is pending does not determine the reasonableness of work expended. This lawsuit does not appear particularly complex, nor does the legal strategy. Certainly conferencing was necessary, and Mr. Yasser's input valuable, but the Court believes 5.3 hours is excessive, given the attorneys' familiarity with these kinds of cases. The Court will recommend that Mr. Schiller's conferencing time with Mr. Yasser be reduced to 3 hours. Consequently, the Court will recommend that Mr. Yasser's hours spent conferencing with Mr. Schiller also be reduced to 3 hours.

Defendants next ask to eliminate or to reduce by 50% Mr. Schiller's time spent communicating with Plaintiffs by e-mail and telephone from September 15, 2007 through March 4, 2008. They assert that there are 52

time entries, totaling 9 hours, for reviewing e-mails, phone conferencing, and legal analysis.

There do appear to be excessive entries for telephone conferences and e-mails with Plaintiffs regarding "litigation strategy and legal analysis." After the initial factual investigation, it is not clear what further strategy and legal analysis with Plaintiffs was necessary. Certainly there would be communication necessary regarding the settlement terms, but 9 hours seems excessive given the relative simplicity of the case. The Court will therefore recommend that these 9 hours of entries be reduced by 30%, to 6.3 hours.

Defendants also object to 3.2 hours that they assert is either "non-legal work" (work that could be accomplished by a non-attorney) or non-compensable time spent on publicity. The court agrees with Defendants that the time spent on press releases and reviewing newspaper articles should not be compensable as attorney time. *See* Greenfield Mills, Inc. v. Carter, 569 F.Supp.2d 737, 752 (N.D. Ind. 2008)("Courts that have considered such claims have routinely denied reimbursement for attorney time related to media relations."). Accordingly, the Court will recommend a

further reduction of 2.2 hours for Mr. Schiller.  *(See* d/e 22, Ex. A., chart of Mr. Schiller's non-legal work.)

The Court also agrees with Defendants that the time spent preparing notices and the letter to the clerk are clerical in nature.  The Court therefore recommends a reduction of .7 hours.  *Id.*  The Court, however, does not view the motion to file document under seal as "non-legal" work.

The rest of Mr. Schiller's time, up to the filing of his petition for fees, appears reasonable and necessary.  Though there was no formal discovery and settlement discussions began shortly after the Complaint was filed, there was significant ground work and work necessary on negotiating and re-negotiating the settlement agreement.[6]  Plaintiffs' attorneys were also successful in securing significant improvements to the softball facilities and opportunities for the softball team.

Defendants next argue that Plaintiffs' attorneys should only be permitted 18.9% of the fees they ask for preparing the fee petition.  (d/e 22, p.2).  Defendants do not dispute that Plaintiffs' attorneys are entitled to "fees on fees," but they contend that the amount sought is excessive.

---

[6]Mr. Schiller avers that the first settlement agreement fell through.

Defendants arrive at the 18.9% figure based on their calculations that Plaintiffs should only be allowed 18.9% of their other fees.

As discussed above, the Court believes Plaintiffs' attorneys are entitled to significantly more than 18.9% of their fees. Defendants do not argue that the time spent on the original fee petition was unreasonable. Mr. Schiller spent 11 hours and Mr. Yasser spent .9 hours on the petition for fees. Drafting the memorandum in support of fees clearly required a review of the billing records, some legal research and some work obtaining the affidavits in support of the petition.

However, the Court does believe that 11 hours is excessive, given Mr. Schiller's presumed familiarity with preparing similar fee petitions in the other cases he has had, such as Ponca City, *supra*. The Court will recommend that these 11 hours for Mr. Schiller be reduced to five.

Mr. Schiller also seeks compensation for 25.6 more hours he spent responding to Defendants' objections to his fees. Specifically, he seeks $7,800 in fees for Plaintiffs' reply (19.5 hours at $400/hr) and $2,440 in fees for filing Plaintiffs' rebuttal to Defendants' sur-reply (6.1 hours at $400/hr). The Court believes the time spent on these is also excessive. The reply (d/e 30) clearly did take research into the cases cited by

Defendants and significant drafting time to respond to Defendants'

arguments, plus time to obtain the exhibits in support of that response.

However, the Court believes 19.5 hours is excessive.  Given Mr. Schiller's

experience, the Court believes that 10 hours (at $300 per hour) is more

reasonable.  Mr. Schiller spent 6.1 hours on the rebuttal.  The rebuttal did

require research into a new argument by Defendants.  Again, though, given

Mr. Schiller's experience, the Court believes that 6.1 hours is excessive.  In

the Court's opinion, the 6.1 hours should be reduced to 3 hours (at $300

per hour).

In sum, for Mr. Schiller, the Court recommends that 18.9 hours be

deducted from the 112.10 hours Mr. Schiller worked from the beginning

through filing his fee petition.  The Court further recommends that 12.6

hours be deducted from the 25.6 hours Mr. Schiller spent on responding to

Defendants' objections to his fees.  Thus, the Court recommends a total

reduction of 31.5 hours, leaving 106.2 compensable hours for Mr. Schiller.

The Court also recommends an hourly rate of $300.  Thus, the lodestar

computation for Mr. Schiller is $31,860 (106.2 x $300).  The Court further

recommends that this figure be reduced by $4,800, which represents the

reduction in hourly rate for the 32 hours of driving time.  (32 x $150 =

$4,800).  Thus, the Court recommends that Mr. Schiller receive total fees in the amount of $27,060.00.

### B.    Attorney Ray Yasser

Attorney Ray Yasser seeks compensation for 10.4 hours of work. Defendants object to all but .4 hours.

As discussed above, the Court recommends that Mr. Yasser's hours spent conferencing with Mr. Schiller will be reduced from 5.3 to 3 hours. The Court also recommends that the 1.4 hours that Mr. Yasser spent on publicity (press releases, talking to reporters) be deducted.  The remaining hours worked appear reasonable and necessary, with the exception of .8 hours identified by Defendants for reviewing simple, short filings like text orders, appearances, and status reports.  The Court recommends that this time be reduced to .3 hours.

In sum, the Court recommends a total reduction of 4.2 hours for Mr. Yasser, leaving 6.2 compensable hours at a rate of $300 per hour.  Thus, the Court recommends that Mr. Yasser receive a total of $1,860 in fees.

### C.    Total Attorney Fees

If these recommendations are accepted, Plaintiffs will be awarded a total of $28,920.00 in attorney's fees.

## III.  Costs

Defendants seek reimbursement for the following costs:

| | |
|---|---:|
| Filing Fees | 350.00 |
| Admission – SJS | 185.00 |
| Cert of Good Standing – SJS | 15.00 |
| Admission – RY | 185.00 |
| Cert of Good Standing – RY | 15.00 |
| Postage | 40.61 |
| Copies 527 @ .25 | 131.75 |
| Notebooks 3 @ 18.00 | 54.00 |
| Long distance phone | 25.00 |
| Hotel: (9-7-07, 11-19-07, 11-20-07) | 311.05 |
| Per Diem: 5 x 30.00 | 150.00 |
| (9-7-07, 9-8-07, 11-19-07, 11-20-07, 11-21-07) | |
| Mileage: | |
|   1156 per trip x 2 (9/07, 11/07) | |
|    @ 43.5 cents/mi | 1005.72 |
| Post-petition copies (63 @.25) | 15.75 |
| **Total:** | **$2,483.88** |

Defendants object to all costs not listed as recoverable costs under 28 U.S.C. § 1920.  They assert that the only compensable cost is the $350 filing fee.

However, "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates-expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses-are part of the reasonable

attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act." <u>Heiar v. Crawford County</u>, 746 F.2d 1190, 1203 (7th Cir. 1984), *citing* <u>Henry v. Webermeier</u>, 738 F.2d 188, 191-192 (7th Cir.1984).

Thus, the costs that do not fall under Section 1920 are recoverable as non-taxable expenses, as part of the attorney's fees.  Defendants do not object to the reasonableness of the amount of expenses.  Those expenses appear reasonable to the Court.  Accordingly, the Court will recommend that $497.50 in taxable costs be allowed (the filing fee and copies), and $1,986.38 in non-taxable expenses be allowed as part of the attorneys fees.

WHEREFORE, the Court RECOMMENDS that Plaintiffs' Petition for Fees and Costs be granted in part (d/e 19).  The Court recommends that Plaintiffs be awarded: attorney's fees in the amount of $28,920.00; expenses recoverable as attorney's fees in the amount of $1,986.38; and $497.50 in taxable costs - a total of $31,403.88.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See also Local Rule 72.2.

ENTER:          February 3, 2009

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE